THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, . *v.* WILLIAM M. TWEED, IMPLEADED, ETC., APPELLANT.

*Order of arrest — Presumption arising from failure to deny facts on which order was granted — Liability of each of several conspirators — remedy against — Bail — amount of — chap.* 49, *Laws of* 1875 — *Particular remedy — no vested right to — Arrest in second action for same cause — when proper — Costs as condition of discontinuance — when must be paid — Order of arrest and attachment may be both allowed.*

Where a party applies for the discharge of an order of arrest or the reduction of his bail, and does not deny the facts on which the order was granted, a presumption is raised that such facts are true.

It appeared that the defendant and other persons had confederated together to fraudulently obtain and divide among themselves a large amount of public moneys. *Held*, that the law imposed upon the defendant; individually, a liability coextensive with the money wrongfully abstracted, although a portion of it may have been received by other persons acting with him.

In such case, each wrong-doer may be proceeded against by seizure of his property and arrest of his person, until actual satisfaction of the demand is secured, or a joint action may be brought against all.

The purpose of the law is to afford the defendant his liberty on giving bail which will be sufficient to render it reasonably certain that he can be found to be taken in execution, and if he cannot be, that his sureties may be compelled to pay the amount of the execution. The latter end can be accomplished only by making the amount of the bail equal to the amount for which judgment may finally be recovered.

Money fraudulently taken from the county of New York, the claim for the recovery of which has been by legislative enactment vested in the city of New York, may be recovered in an action brought by *The People* pursuant to chapter 49 of the Law of 1875.

There is no such thing as a vested right to a particular remedy, provided that adequate means of redress are otherwise supplied.

A person may be arrested in a second action for the same cause by the same plaintiff, if the plaintiff has been *non prossed* in the former action, or such action has been discontinued and the second arrest is not vexatious.

When an action is discontinued, with costs, the act of the defendant in adjusting the costs must precede their payment, and until that is done the plaintiffs will not be in default for their non-payment.

Both an order of arrest and an attachment may be simultaneously pursued so far as to secure a probable satisfaction of the plaintiff's demand, but the arrest of the defendant and seizure of his property to the *full* amount of plaintiffs' claim will not both be allowed.

APPEAL from an order denying a motion made to discharge an order of arrest, and refusing to reduce the amount in which the defendant, William M. Tweed, was directed to be held to bail.

*Field & Deyo*, for the appellant. A defendant once arrested in a civil action cannot be again arrested for the same cause of action except under circumstances which do not arise in this case ; and this is the rule, though the first suit may have been discontinued. (1 Tidd's Prac. [3d Am. ed., 1856], 174.) Tidd cites a number of cases, some of them as sustaining the general rule, and some as showing the exceptions. Among them are the following : *Cartwright* v. *Keely* (7 Taunt., 192) ; *Archer* v. *Champney* (3 Moore, 607) ; *Williams* v. *Thacker* (4 id., 294) ; *Molling* v. *Buckholtz* (3 M. & S., 153) ; *Wheelwright* v. *Joseph* (5 id., 93). The same general rule is followed in this State. ( *Wright* v. *Peterman*, 4 Robt., 704 ; *People* v. *Kelley*, 1 Abb. [N. S.], 432 ; *Matter of Johnson*, 7 Robt., 269 ; *Enoch* v. *Ernst*, 21 How., 96 ; *Peck* v. *Hozier*, 14 Johns., 346 ; *Hernandez* v. *Carnobeli*, 4 Duer, 642 ; S. C., 10 How. Pr., 433.) The first suit in which the defendant was arrested has not been discontinued. W. H. Peckham, in his affidavit says, it "has recently been or will be discontinued." The proceedings show that the costs have not been paid, as provided for in the order, and until they are paid the order is ineffectual. (*Pignolet* v. *Daveau*, 2 Hilt., 584 ; *Morrison* v. *Ide*, 4 How., 304 ; *Harden* v. *Hardick*, 2 Hill, 384 ; *James* v. *Delevan*, 7 Wend., 511.) It is entirely clear, from the cases cited, that a defendant cannot be arrested in a second suit whilst a prior suit in which he is held to bail is pending, and that if the prior suit had been discontinued, the second would have been held vexatious. The present suit is vexatious, and the prosecution, under all the circumstances, may be characterized as a malicious one. The court will not willingly lend its aid in a suit of that character. An attachment has been issued in this action. An order of arrest and an attachment in the same action should not be allowed. ( *Wilkes' Case*, 19 How. St. Trials, 1083.) The amendments to the Code, under which the attachment and the order of arrest are obtained in this action (Laws of 1875, chap. 28), are amendments only of two distinct sections of the Code, viz., section 179 of arrests, and sections 227 and 229, of attachments. The only

alterations are to extend the cases where arrests may be had to cases of persons obtaining, without right, public moneys, and to extend the cases where attachments may be had to the same class of persons. In all other respects the law remains as it was before. There is nothing to authorize the combination of the two remedies in the cases spoken of, and the law on that subject remains as before. (*Scott* v. *Crane*, 1 Conn., 258; *Daniels* v. *Wilcox*, 2 Root, 346; *Trafton* v. *Gardiner*, 39 Me. [4 Heath], 501; U. S. Dig., 16, p. 66.) No cause of action exists in favor of the present plaintiffs. The Court of Appeals in their decision in the first case, sustaining the demurrer, have decided that the people cannot sustain such an action. The act of the legislature does not improve the plaintiffs' position. The declaratory part must be discarded altogether. Under our system it is the province of the court and not of the legislature to interpret the law. So far as the act is designed to make a new rule it is inoperative, because it is not competent for the legislature to take from the county of New York its rights of action and vest them in the State. Such an act is palpably unconstitutional. But, supposing the action well founded in all respects, such an amount of bail is excessive and contrary to the Constitution of the State. (Const. U. S., art. 8 of the amendment; Const. N. Y., § 5, art. 1.) The bail should be reduced. (*Louis* v. *Mitchell*, 2 Hill, 379; *Wilkes' Case*, 19 How. St. Trials, 989.)

*Chas. O' Connor* and *Wheeler H. Peckham*, for the respondent. The supposed rule that no one shall be a second time arrested by the same plaintiff for the same cause of action, if it could be proven, would have no application. This is not the same cause of action as that in the Ingersoll suit. In that case the Court of Appeals held absolutely and finally that the plaintiff had no cause of action. That was not a case of premature suit, or insufficient proof. The decision was that by the existing law no cause of action existed. The present action is brought under a law transferring causes of action which existed in favor of the mayor, etc., of New York, to the people, or rather providing that rights of action belonging to the mayor, etc., may be sued for by the people. It is in analogy to, and in extension of the right of the attorney-general in England to sue for misappropriation of public funds by

public officers of municipal corporations. (*Attorney-General* v. *Dublin*, 1 Bligh [N. S.].) It therefore cannot be affected by any action the people may have seen fit to take before the passage of that law. (*Barnes* v. *Maton*, 15 East, 631.) In the former suit Tweed could have barred the plaintiffs by alleging that the title to sue was in the local corporation. The Ingersoll suit was discontinued prior to the arrest in this case and prior to the commencement of this action. There can be no question at this day that a defendant may be arrested in a second suit after the discontinuance of the first, provided only that the second arrest does not appear to be vexatious. (*Peck* v. *Hozier*, 14 Johns., 346; *Brown* v. *Davis*, 1 Chitty, 161 [K. B.]; *Bates* v. *Parry*, 2 Wils., 381; *Olmius* v. *Delany*, 2 Stra., 1216 [K. B.]; *Turton* v. *Hayes*, 1 id., 439; *Harris* v. *Roberts*, C. P. Barnes, 73; *Kearney* v. *King*, 1 Chitty, 273; *Archer* v. *Champney*, 3 Moore, 608; 1 B. & B., 289; *Musgrave* v. *Medex*, 8 Taunt., 24.) An English rule (H. 2, W. 4 R., 7), provides that "after *non pros*, nonsuit, or discontinuance, the defendant shall not be arrested a second time without the order of the judge." This rule does not exist in this country, but every case is left to be decided upon its own circumstances. (Graham Pr. [2d ed.], 133 *et seq.*) The Ingersoll case was effectually discontinued without payment of costs. Under the old practice a rule to discontinue on payment of costs was a rule of course, entered in the common rule book by the plaintiff's attorney, without application to the judge. On that rule the defendant could not enter judgment of *non pros*. His only remedy, if the costs were not paid, was to proceed in the cause. (*James* v. *Delavan*, 7 Wend., 512; *Huntington* v. *Forkson*, 7 Hill, 197; *Stansbury* v. *Durell*, 1 Johns. Cas., 397; *Provost* v. *Johnson*, 12 Wend., 289.) The plaintiff has now tendered the defendant his costs. According to the strictest alleged rule that is sufficient. (1 Graham Pr. [ed. 1847), 525, and notes, citing *McElwain* v. *Fitzgerald*, MS., N. Y. Com. Pleas, January term, 1831; *Brandt* v. *Peacock*, 1 B. & C., 649; *White* v. *Smith*, 4 Hill, 166; *Foster* v. *Bowen*, 1 Code R. [N. S.], 236.) The old order of arrest was not outstanding. It fell with the order of discontinuance. (*Belcher* v. *Gansell*, 4 Burr., 2503; *Hope* v. *Acker*, 7 Abb. Pr., 308; *Crockett* v. *Smith*, 14 id., 62; *Orphan* v. *McCartee*, Hopk., 372.) Arrest

and attachment may coexist. (*Rock., R. I. and St. L. R. R. Co.* v. *Boody*, 56 N. Y., 456.) Especially is that so where, as in this case, nothing has been levied on under the attachment. The sheriff has made no return, and the *lis pendens* is a mere notice filed by the plaintiffs and not by the sheriff. (*Fitzgerald* v. *Blake*, 42 Barb., 513 ; *Rodgers* v. *Bonner*, 55 Barb., 9 ; *Petition of Edelsten*, in this court, MS. of WESTBROOK, J.) The constitutional provision as to bail applies only to criminal cases. The bail is not excessive, but on the contrary is really too small. There is no affidavit that defendant is unable to give the bail demanded. It is not denied that defendant intends to flee the jurisdiction. The inevitable inference is that he wants the bail reduced in order to give and forfeit it, and flee the jurisdiction. He would thus escape the consequence of a judgment for, say $7,000,000, by the forfeiture of such small sum as he might persuade the court to demand of him. The ordinary rule at common law was, that the defendant was held to bail of course, and without any judge's order, in such sum as the plaintiff should indorse on the writ. This practice led to abuses, and by 12 George I, chapter 9, the plaintiff was required to make and file an affidavit of debt, and was required to indorse the sum sworn to on the writ, and for that amount the defendant was always held to bail. (*Norden* v. *Horsley*, 2 Wils., 69 ; S. C., Barnes, 159 ; *Whiskand* v. *Wilder*, 1 Burr., 330 ; 1 Tidd's Pr., 149 *et seq.*)

DANIELS, J. :

The complaint which was verified by a proper affidavit, was, with the affidavits of several other persons, made the foundation of the order to hold the defendant, William M. Tweed, to bail. By them it was shown, to a reasonable degree of certainty, that under the pretense of conformity to an act passed on the 26th day of April, 1870, by which the preceding county liabilities were required to be audited by the mayor and comptroller of the city of New York and the president of the board of supervisors of the county of New York, fictitious and spurious claims were certified and paid as properly audited, to the amount of $6,198,957.85. The defendant, William M. Tweed, was at the time the president of the board of supervisors of the county, and it is alleged, and the allegation is sustained by the verification of the complaint and the other affi-

davits used with it on the application for the order of arrest, that he fraudulently and falsely, combining and confederating with other persons, procured such fictitious and spurious claims to be made out, presented for payment, certified as audited or allowed, and caused them to be afterward paid out of the lawful moneys of the county, and he was shown to have been a principal participant in the funds purloined in that manner. Direct as well as circumstantial evidence was presented in support and confirmation of the charges made, and together it very satisfactorily established the complicity of the defendant Tweed in the fraudulent conspiracy to defraud the county, and in the proceedings by means of which the fraud was rendered successful. It cannot ordinarily be expected that the very clearest evidence can always be produced showing the existence of such a combination and the consummation of its purposes, for it is usually secretly formed and stealthily executed. A prominent feature of the devices resorted to, is concealment and the destruction of all direct evidences of guilt. The consequence is that circumstances must be very much relied upon in support of the main facts to be developed. And in the present instance they are as direct and well authenticated, as they can be expected to be found in cases of this description. A similar action is shown to have been commenced against the defendant in the year 1871, in which an order for his arrest was made on which he was held to bail. And while he applied, as he has in the present case, to be relieved from it, he is shown not to have denied the truth of the affidavits on which the order was made. The same thing is true in this case. For he has made no affidavit denying the facts on which the order was founded. That omission, as long as he has been afforded an opportunity to deny the facts charged against him, renders it probable that he could not truthfully do it, and the effect of it is to increase the force of the circumstances disclosed, as well as the probability that the statements made by two of his accomplices as to what really did take place, are true. The rule upon this subject, even in criminal cases, is, that " the absence of such evidence, especially when it appears to be in the power of the prisoner to furnish it, creates a strong presumption of his guilt, a strong inference against him, and is a circumstance greatly corroborative of the truth of the evidence given upon the other side. In a doubtful case it would

justify the jury in resolving the doubts against him." (*Gordon* v. *People*, 33 N. Y., 501, 508, 509.) Upon the same subject, COMSTOCK, who was at the time chief judge of the Court of Appeals, held, that more or less importance might well be attached to the omission of the accused to contradict the evidence, where, if it was not true, contradiction was within his power. And referring to an important fact in the case, he said : " If he could disprove this circumstance, but made no attempt to do so, the omission most certainly imparted a higher degree of credibility to the statement of the accomplice, and might justly influence the belief of the jury as to the truth of that statement." (*People* v. *Dyle*, 21 N. Y., 578, 580, 581.) The affidavits of the accomplices in this state of the case must be, as they reasonably can be, relied upon (*Haskins* v. *People*, 16 N. Y., 344, 352), and as they are confirmed and rendered highly probable by the circumstances established by the other affidavits, the facts alleged in the complaint may well be adopted as the truth. Indeed, no other conclusion could, with any color of propriety, be regarded as supported by them.

It appears, therefore, in the case, that the defendant, with the other persons named in the papers, most of whom were either public officers or persons officially employed, entered into a deliberate purpose, by means of a seeming discharge of public duties and the exercise of public authority, to make out and cause to be presented fictitious accounts and demands against the county of New York, and to procure their allowance and payment, and the distribution of their proceeds between himself and those acting with him. And the design was shown to have been so completely executed, that the defendant Tweed, and the other persons confederated and acting with him, procured and divided among themselves over $6,000,000 of the county money, to which they had not the least right or title whatsoever.

These facts, which were established by the papers produced on the application for the order, rendered the defendant Tweed and those co-operating with him joint wrong-doers, and, as such, liable for the entire loss produced by the acts complained of. That results from the execution of the fraudulent combination, in which he appears to have been the controlling individual. And in that state of the case the law will impose upon him, individually, a liability

co-extensive with the moneys wrongfully abstracted, although they may have been partially received by others acting with him. The rule of law on that subject is, that each person engaged with others in the perpetration of a wrong, may be compelled to respond for the entire consequences of the injury done. A separate action may be maintained against each, and a recovery had for all the damages sustained, and each may be proceeded against by seizure of his property and arrest of his person, until actual satisfaction of the demand has been secured; or a joint action may be maintained against all, according to the election of the plaintiff. (2 Wait's Law and Practice, 286; *Low* v. *Mumford,* 14 Johns., 426; *Guille* v. *Swan,* 19 id., 381; *Creed* v. *Hartmann,* 29 N. Y., 591.) And the case of an executed conspiracy forms no exception to this rule. (*Hutchins* v. *Hutchins,* 7 Hill, 104.) The defendant Tweed was, therefore, liable for the entire amount of money fraudulently obtained through his direction, participation, approval or connivance. It was his duty to guard the public treasury from frauds and peculation; and if he so far failed to perform it, as the evidence now before the court shows him to have done, as to become a voluntary participant in despoiling it, he has no right to complain of the consequences he may suffer as the natural results of his acts. When public officers willfully disregard their obligations, they certainly deserve the full measure of punishment which the really indulgent laws of the State have provided as a protection against their acts. Instead of ingeniously searching for and devising unsubstantial reasons for their immunity, it will be the purpose of the courts to maintain all the restraints which have been provided against them, as firmly as the circumstances will reasonably permit. One of those is the remedy by way of arrest, in order to secure indemnity for the wrong committed, by holding the defendant personally in custody until judgment can be recovered and execution issued upon it, or procuring bail for the same purpose, and for the payment of the amount recovered if the defendant cannot be found. The object of the order of arrest is security of either one kind or the other. By law the body is deemed the highest security. But for the purpose of avoiding unnecessary hardship, that is allowed to be discharged on bail, which, in the end, may be required to pay the judgment in the case. For that reason, it cannot be an adequate and full secur-

ity unless the amount fixed by the order approximates the probable recovery in the case. And when it simply does that, the order cannot be liable to the charge of being excessive. The criterion by which it is to be measured, is not the amount of bail which the defendant may be able to give. If it were, the very worst offenders would be entitled to be released on the smallest security. For, ordinarily, their ability in that respect is much below their capacity for crime. The design of the law is to afford the defendant his liberty on bail, when that will be sufficient to render it reasonably certain that he can be found to be taken in execution, and if he cannot be, that his sureties may be compelled to pay the amount of it. The latter is as important an object to be considered as the former. And it can only be attained by making the amount for which bail may be given equal to the amount which, in the end, the sureties may be called upon to pay to satisfy the judgment. A complete indemnity can be procured in no other way. The defendant Tweed was treated with great liberality in this respect; for, upon the papers produced on the motion, a liability in upward of $6,000,000 has been shown, while the order permits him to be discharged by furnishing bail in the sum of $3,000,000. The cause of complaint is one for which, it is not denied, bail may be lawfully required, and as long as that is the case, the amount should correspond to that which will probably be the extent of the recovery. It certainly has not, in this instance, been exceeded, and the defendant consequently can present no well founded claim for its reduction. The amount is unusually large, but the reason of that is the uncommon magnitude of the defendant's depredations. If the burden imposed cannot be avoided by him, his incapacity results from his own acts, and not from that of the law, which has been generously administered in his behalf.

The moneys which were taken were, at the time, the property of the county of New York, and, by the consolidation of that municipality with the city, by a recent act of the legislature, the claim for their recovery has been vested in the city of New York (*Board of Supervisors* v. *Tweed*, 10 S. C. [3 Hun], 682), and for those reasons the defendant Tweed insists that the people cannot maintain this action, and consequently had no cause for arresting him. It is true that an act of the legislature, which proposes to take the

property of one body corporate and give it to another, would violate the provision of the Constitution declaring that no person shall be deprived of his property without due process of law, and that private .property shall not be taken for public use without compensation. The legislature cannot take the property of one person and give it to another, but still, if it should attempt to do so, and the owner assented to the enactment, no other person could complain of it as a violation of the Constitution. The person injured by the provision is the one from whom the objection should come. If that party declines to make it, there is no principle of law that will allow another, not in privity with him, to make it for him. For a party may renounce or waive even a constitutional provision existing in his favor. (Sedg. on Stat. and Const. Law., 111; *Embury* v. *Conner,* 3 Comst., 511, 518; *Phyfe* v. *Eimer,* 45 N. Y., 102.) And, when that has been done, another· having no interest in the right surrendered cannot gainsay the validity of the act. The city of New York, the owner of the demand against the defendant Tweed, has been made a defendant in the action, and does not question the right or power of the people to maintain it. Its omission to object is practically an assent; sufficiently so, certainly, to conclude it by any judgment which may be recovered, from again asserting the same claim in its own favor. The familiar doctrine of estoppel will then apply to the case, which will fully protect the defendant against another action for the same demand. And that effect has been positively secured by the statute for such a judgment. (Chap. 49, Laws of 1875, § 2.) But another forcible reason stands in the way of the success of this objection, and that is, that the act of 1875, under which this action was commenced in the name of the people, was not intended to deprive either the county or the city of New York of any of its property, but rather to devise an efficient remedy for its recovery. Its object was to create a remedy for the ultimate benefit of the city and county, which should not be controlled by the local authorities ; not to deprive them of any of their rights or property. That is clearly the tenor and effect of the provisions made by the act. (Chap. 49, Laws of 1875, § 3.) And, in that view of it, there can be no conflict between it and any provision of the Constitution. For that has left the control and modification of legal remedies within the power of the legislature,

as long as material, personal or proprietary rights are neither prejudiced nor extinguished by the alterations which may be made. The rule is, that there is no such thing as a vested right to a particular remedy, provided that adequate means of redress are otherwise supplied. (Sedg. on Stat. and Const. Law, 692, and cases cited; *Hauptman* v. *Catlin*, 20 N. Y., 247, 250.) The defendant certainly has no reason to complain, for, as he can be made to pay but once, it can make no difference to him whether the suit against him is in the name of the city or of the people of the State. In either case the means of redress are precisely the same. The difference is only one of a nominal character.

As the defendant Tweed was arrested on an order made in another action prosecuted against him by the people, it is claimed that his arrest in this case was irregular and improper. But no arbitrary rule of that nature has been established by the authorities. It is only where the second arrest appears to be vexatious, oppressive, or in bad faith, that the defendant can insist upon his discharge. That very clearly appears to be the law from the cases cited in support of the application made by him to be relieved from the order of arrest in this action. In *Archer* v. *Champney* (3 Moore, 607), it was stated that, " the general rule is that a defendant cannot be rearrested after a discontinuance, nonsuit or *non-pros.*, unless the former action was founded on a mistake, which mistake would tend to show that the second arrest was not vexatious. But it is not only necessary for the plaintiff to show that he discontinued or *non-prossed* the former action, on the ground of misconception or mistake, but that the second arrest was not vexatious, and if he does not do this, the court will infer that it was so." The same decision was made in *Bates* v. *Barry* (2 Wilson, 381); *Brown* v. *Davis* (1 Chitty, 161); *Olmius* v. *Delany* (2 Strange, 1216); *Turton* v. *Hayes* (1 id., 439); *Harris* v. *Roberts* (C. P. Barnes, 73); *Musgrave* v. *Medex* (8 Taunt, 24). And in *Peck* v. *Hozier* (14 Johns., 346), it was declared that " the maxim that no man shall be twice arrested for the same cause, is not universally true, for where the plaintiff is *non-prossed* for want of declaring, or discontinues his suit, on payment of costs, he may arrest the defendant *de novo.*"

The preceding action was prosecuted through all the courts, and

it was finally held in the Court of Appeals that it could not be maintained in the name of the people. That was the reason why the former arrest was rendered ineffectual. Then the act was passed enabling the people to maintain the action, and under its authority this suit has been commenced. These facts clearly sustain the conclusion that the arrest in this case has not been vexatious. It was the defendant's persistent resistance that defeated the preceding action, and the clear injustice of allowing public offenders to defeat all measures taken for the purpose of securing indemnity for the injuries caused by their wrongs, prompted the enactment which has rendered this suit practicable. It is entirely clear that the present arrest was made in good faith, and that the failure of that previously made was sufficiently excused to render the order in this case a proper one.

An order was entered in open court on the 20th of March, 1875, discontinuing the preceding suit, with costs, and notice of it was served on the attorney for the defendant Tweed on the sixth of April following. This however is objected to as ineffectual, because the costs of that suit were not paid. But in answer to that it has been shown that they have never been adjusted, and there is evidence in the case that the adjustment has been designedly omitted by the defendant, in order to enable him to urge this objection. Payment of the costs has been offered in case they should be adjusted, so that the amount to be paid could be known. The act of the defendant's attorney in procuring an adjustment, must necessarily precede their payment, and that has not been performed; until that has been done, the plaintiff cannot be in default for not paying such costs, and the objection should not be allowed to prevail. For all purposes the other suit is now out of court, unless the plaintiff neglects to pay the costs when they are properly adjusted, and it cannot be charged with that neglect until after the amount to be paid shall be legally ascertained. (*White* v. *Smith*, 4 Hill, 166.) In *James* v. *Delavan* (7 Wend., 512), the costs were taxed, and it was only because the plaintiff had refused payment when they were afterward demanded, that the defendant's subsequent proceedings in the case were approved; and the decision in *Harden* v. *Hardick* (2 Hill, 384), clearly assumes the discontinuance without payment to be good, until default shall

be made by the plaintiff, which cannot be the case before the costs have been properly adjusted. As the case now stands, the plaintiff can do nothing more in the way of completing the discontinuance of the other suit, until the defendant has procured an adjustment of his costs, and he cannot maintain it as a pending action as long as he omits to cause that to be done. If the plaintiff had waited until the defendant had secured an adjustment of his costs before the arrest in this case had been made, it probably would never have been made at all. Such a rule of practice would put it out of the power of a plaintiff even to maintain a second action for the recovery of the same demand. It is not sanctioned by the authorities. (*Olmius* v. *Delany*, 2 Strange, 1216.) The remaining ground on which it has been insisted that the order of arrest should be discharged, is the fact that an attachment against the defendant's property has also been issued in the case. It was not shown that his property had been seized under it, but, on the part of the plaintiff, affidavits were read, rendering it highly probable that the attachment had not been levied on any property owned by him. From these affidavits it was entirely clear that he had in no way been injured or embarrassed by the attachment. He has not been proceeded against, both by the attachment and the order of arrest, and the mere fact that the attachment was issued, is not sufficient to render the proceedings under the order alone, invalid. The case of *The Rockford, Rock Island and St. Louis R. R. Co.* v. *Boody*, as it was decided at the Special Term, does not proceed so far as to hold that the defendant cannot be arrested because an unserved attachment has also been issued in the case. What was there decided was, that the plaintiff should be required to elect on which the defendant should be proceeded against, and even that seems to have been regarded as too much of a restriction when the case was considered by the Court of Appeals. For, by the opinion there delivered, it was held to be discretionary with the court to allow the plaintiff the benefit of different provisional remedies, to the extent rendered necessary for the complete security of his cause of action. And that seems to have met with the concurrence of all the members of the court. Upon this subject Judge JOHNSON said, that "there are numerous cases in which an arrest may be made, and an attachment cannot be granted, and others in which

an attachment may issue, and an arrest is not allowed. Yet this does not lead necessarily to the conclusion that the two remedies cannot both be availed of in the same case. On the contrary, the very fact that there are cases which, according to the terms of the Code, fall alike under the description of cases in which an arrest and attachment are respectively allowed, seems strongly to indicate, that in those cases there is at least no absolute incongruity in both modes of proceeding in the same action, and that if a party can be confined to one or the other, it can only be in virtue of a discretion in the court to prevent what may be, or may result in, oppression of the party against whom both forms of proceeding are asked." "It may be that the Supreme Court has a discretion to limit a party to one or the other, when either is ample or sufficient in its judgment." (*Rockford, Rock Island and St. Louis R. R. Co.* v. *Boody*, 56 N. Y., 456, 458, 459, 460.) This conclusion of the court appears to sustain the view that either or both the remedies, by arrest and attachment, may be simultaneously pursued, so far as to secure a probable satisfaction of the plaintiff's demand, in case of a recovery of it by a judgment. It of course would not permit both an arrest of the defendant's person, and also a seizure of his property for the full amount of the plaintiff's claim, by each mode of proceeding, for that would be to allow a double indemnity, and would prove unreasonably harsh and oppressive. But to obtain what may be equivalent to no more than a complete indemnity, the creditor, under this authority, may proceed by both an arrest of the defendant's person and the attachment of his property. And it seems to have been the intention of the amendments made to the Code in the present year, to sanction that course of proceeding in cases of this particular description, for they have expressly conferred the right to seize the defendant's property and arrest his person, in actions brought for the misappropriation of public property and money. (Laws of 1875, chap. 28, § 1; subd. 6, §§ 2, 3.)

The former actions, brought by the city and county, have also been referred to as standing in the way of this suit. But under the act of 1875 that objection cannot be sustained, for it has provided that an action may be maintained in the name of the people, even though another action for the same cause may have been commenced

by the local authorities; and in order to prevent the defendant being harassed at the same time by two suits for the same cause, it has been further provided, that the proceedings in the action by the local authorities may be stayed on motion of any party to it. (Chap. 49, Laws of 1875, §§ 1, 2.)

This disposes of all the objections taken on behalf of the defendant to the order of arrest in the present case, and as neither of them can be sustained, the order appealed from should be affirmed, with ten dollars costs, besides disbursements.

BRADY, J.:

The amount in which the defendant was held to bail seems to be and is large, but it does not follow that it is excessive. Whether it is or not depends upon the sum claimed, and it appeared to be less than half that sum. Whether the defendant is guilty of the frauds charged against him or not, we are not advised by any thing he has said on the subject; and with a demand of $6,000,000 and upward *prima facie* established by the proofs and his silence, it would be an extraordinary exercise of power to reduce the amount of the bail ordered. The object of requiring bail is correctly stated by Justice DANIELS; and if there be no precedent, as it is claimed, for the amount which the defendant is required to give, it may be answered that there is no parallel for the sum alleged to have been fraudulently abstracted. Every case makes its own details. The claim, therefore, determines the amount of bail to be exacted. The principles of law are flexible, and bend to meet each emergency to secure the administration of justice. The general rule in cases like this, is to require a defendant to be held to bail in a sum rather in excess of the amount than below it, in order to cover not only the demand but the expenses of prosecuting it to judgment. The courts have anticipated the hardship of confinement in cases of fraudulent claims, where, as is frequently the case, the fraudulent debtor is unable to procure the necessary sureties.

The defendant is not the only person who has been restrained of his liberty for a similar reason, and hence the rule that in such cases the cause may, on a defendant's application, and on two days' notice, be advanced upon the calender and speedily tried. The defendant in this case is entitled to the benefit of this rule, and,

upon serving his answer, can demand and will be entitled to an early trial. If it be declared that he is not liable for any sum, the whole case being presented and considered, he must be relieved from his imprisonment by virtue of the order of arrest herein; or, if the judgment recovered be less than the sum of the bail demanded from him, he can avail himself of the circumstance in such manner as he may be advised. The duration of his confinement, by virtue of this action, depends, therefore, much upon his own proceedings. The order should be affirmed.

Order affirmed, with ten dollars costs, besides disbursements.

---

JAMES V. SCHENCK, Appellant, v. DANIEL P. INGRA-HAM, Jr., and others, Respondents.*

*Receiver — settlement of his accounts — how reviewed — who may apply to vacate such settlement.*

Where it is sought to review proceedings had on the settlement of a receiver's accounts, on the ground that claims allowed and paid out of funds in the hands of the receiver, under an order of the court, are fictitious and unfounded, the better proceeding by a creditor of the fund is to apply to be made a party to the suit in which the order was made, and to have such order vacated; for in such proceedings the court has a wider discretion and greater power for relief than in an independent action, depending for its success upon satisfactory proof of fraud.

It is sufficient, to maintain the application in such case, that the creditor applying to intervene in the proceedings is entitled to participate in the fund, in however small a degree it may be.

Appeal from an order denying a motion to have certain orders directing the distribution of funds in the hands of a receiver, and discharging such receiver, set aside and vacated, and from a judgment dismissing plaintiff's complaint, in an action brought to set aside an alleged fraudulent settlement of a receiver's accounts, and for the satisfaction of plaintiff's judgment by such receiver. The defendant Ingraham was appointed a receiver in an action to settle up certain partnership affairs, and paid, as was claimed, exorbitant fees to his counsel, and retained an improper sum for his own ser-

* This case was decided at the March term, 1875.