On the 13th day of January, 1874, the plaintiff was injured while a passenger on defendant's railroad, and was removed to his home in Buffalo. The next day one of plaintiff's attorneys, Mr. Strong, called upon him and told him somebody had sent him there. He was a stranger to the plaintiff, and plaintiff had not sent for him. He asked the plaintiff if he wished him to take his case against the defendant. The plaintiff replied that he had no money to go to law with the defendant. Strong then said if plaintiff and he could agree, he would furnish the money to go on with the suit, and asked him if he was satisfied to have him sue the defendant and go on with the suit, and he said he was. Strong said he would collect all he could, and for his pay wanted half of what he should collect, and the plaintiff assented to this. Strong then drew up and plaintiff executed the following instrument:
"This may certify, that I have retained Goodyear Strong to sue for, recover and arrange a claim I have against the New York Central Hudson River Railroad Company, *Page 447 
and they, said Goodyear Strong, are to find all the money necessary to carry on said case, and shall divide with me the damages which may be recovered; and if nothing is recovered, they shall have nothing for their services. Consideration, one dollar."
On the next day, after the execution of this paper, this suit was commenced by the service of a summons. At the time of such service, notice was given to the defendant that the attorneys were interested in the cause of action, for their services to the extent of one-half thereof. Subsequently the plaintiff called at the office of defendant's attorneys and offered to settle his claim, and after some negotiation, the plaintiff asserting that he had done nothing to deprive himself of the power to settle, it was agreed that the defendant should pay him in full settlement of his claim against it, $1,000, and this sum was paid. Plaintiff's attorneys thereafter served the complaint in this action, and defendant's attorneys served the answer setting up the settlement in bar of the action.
The referee found among other things that the defendant's attorneys acted in good faith, having no knowledge of the agreement between plaintiff and his attorneys, but that the settlement was nevertheless fraudulent and collusive as against plaintiff's attorneys. He decided that the settlement was a bar to the action, and that plaintiff's attorneys had no right to prosecute and maintain the action for the sole purpose of reaping the fruits of their agreement with their client. We believe this decision to have been right. It is certainly a general rule that parties to an action may settle the same without the intervention of the attorneys. Generally, a plaintiff who has a cause of action against a defendant may release and discharge it upon such terms as are agreeable to him. This he may do while the action is pending, and after judgment he may cancel and discharge the judgment. In all this generally he infringes upon no privilege and violates no right of his attorney. But since the time of Lord MANSFIELD, it has been the practice of courts to intervene to protect *Page 448 
attorneys against settlements made to cheat them out of their costs. If an attorney has commenced an action, and his client settles it with the opposite party before judgment, collusively, to deprive him of his costs, the court will permit the attorney to go on with the suit for the purpose of collecting his costs. (Swain v. Senate, 5 Bos. Pul., 99; Cole v. Bennett, 6 Price, 15; Morse v. Cook, 13 id., 473; Talcott v.Bronson, 4 Paige, 501; Rosquin v. The Knickerbocker StageCo., 12 Abb. Pr., 324; Ward v. Syme, 9 How. Pr. R., 16;McDonald v. Napier, 14 Georgia, 89.)
There are many cases where this has been allowed to be done. It is impossible to ascertain precisely when this practice commenced, nor how it originated, nor upon what principle it was based. It was not upon the principle of a lien, because an attorney has no lien upon the cause of action, before judgment, for his costs; nor was it upon the principle that his services had produced the money paid his client upon the settlement, because that could not be known, and in fact no money may have been paid upon the settlement. So far as I can perceive, it was based upon no principle. It was a mere arbitrary exercise of power by the courts; not arbitrary in the sense that it was unjust or improper, but in the sense that it was not based upon any right or principle recognized in other cases. The parties being in court, and a suit commenced and pending, for the purpose of protecting attorneys who were their officers and subject to their control, the courts invented this practice and assumed this extraordinary power to defeat attempts to cheat the attorneys out of their costs. The attorneys' fees were fixed and definite sums, easily determined by taxation, and this power was exercised to secure them their fees.
After judgment, the attorney who has procured it has a lien upon it for his costs. This lien is upheld upon the theory that the services and skill of the attorney have procured the judgment. There is, then, something upon which a lien can attach, and the courts uphold the lien by an extension to such cases of the principle which *Page 449 
gives a mechanic a lien upon a valuable thing which, by his skill and labor, he has produced. (Cross on Liens, 216, 220, 226;Ormerod v. Tate, 1 East, 464; Reed v. Duffy, 6 T.R., 361;Mitchell v. Oldfield, 4 id., 123; Furmie v. Gibson, 3 Atk., 719; Ward v. Syme, supra.) If notice be given of this lien, then the defendant in the judgment cannot defeat it by a clandestine or collusive payment to the plaintiff.
Before our Code of Procedure, I believe there was no case where the lien was upheld for more than the taxable costs. But the Code (section 303) provides that "all statutes establishing or regulating the costs or fees of attorneys, solicitors and counsel in civil actions, and all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor or counsel for his compensation are repealed; and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties;" and now it is held that after judgment an attorney may have a lien thereon for any compensation which his client has agreed to pay him, and to that extent it is said he may be regarded as an equitable assignee of the judgment. (Rooney v. Second Ave. RailroadCo., 18 N.Y., 368; McGregor v. Comstock, 28 id., 237; Ely
v. Cooke, 28 id., 365; Marshall v. Meech, 51 id., 140;Wright v. Wright, 70 id., 98.)
A person owning a judgment for the recovery of money may give his attorney, or any other person, by agreement, rights and equitable interests therein, which the defendant therein charged with notice must respect. So if the cause of action before judgment be in its nature assignable, the owner of it may assign and, by agreement, create legal and equitable interests therein, and such agreements may now be made with his attorneys as well as with other persons, and when such interests have been created and notice given of them they must be respected. But what I maintain is, that before judgment, in the absence of any agreement, the attorney has not now and never had any lien upon, or interest *Page 450 
in, the cause of action; and when the cause of action is like this, such as by its nature is not assignable, the party owning it cannot by any agreement give his attorney or other person any interest therein. In People v. Tioga C.P. (19 Wend., 73), COWEN, J., said: "Assignments of personal injuries must still be regarded as mere covenants or promises which we cannot directly protect against the interference of the immediate party, though the defendant have full notice of the effort to assign. If the person professing to assign will do prejudice to the right by extinguishing or impairing it, the party with whom he deals must be left to his action for damages according to the nature of the undertaking." Mere personal torts of this kind cannot be separated from the person upon whom they are inflicted, and they die with him.
Here there was not even any agreement by plaintiff to assign any portion of the claim to his attorneys. The agreement executed did not purport to give them any present interest in the cause of the action. It was simply an executory agreement that the attorneys should share in the damages recovered, the cause of action remaining intact in the plaintiff. Still an agreement to divide the recovery in such a case would attach itself to the judgment when recovered, and give the attorney an equitable interest therein.
It is, therefore, beyond dispute that the plaintiff's attorneys had neither a legal nor equitable interest by way of any assignment or lien on the cause of action. The defendant was not asking any favor of the court. It was in court simply insisting upon its settlement with the plaintiff as a defense to his cause of action. Therefore, if the attorneys are entitled to the protection they now seek, it is only by the exercise of the extraordinary power of the court to which I have first above alluded, and I am prepared to say that such power should not be exercised in a case like this. It has not been conferred upon the courts by statute, usage or common law. Its exercise to secure to an attorney the statutory fees, small in amount and easily ascertainable, was *Page 451 
just and proper, and could lead to no abuse. But to exercise it so as to enforce all contracts between clients and attorneys, however extraordinary, is quite another thing. Here the attorneys were contractors. They took the job to carry this suit through, and to furnish all the labor and money needed for that purpose, and they are no more entitled to the protection which they now seek than any other person not a lawyer would have been, if he had taken the same contract. When a party has the whole legal and equitable title to a cause of action, public policy and private right are best subserved by permitting him to settle and discharge that if he desires to, without the intervention of his attorneys.
The conclusion I have thus reached is sanctioned by the case ofPulver v. Harris (62 Barb., 500; S.C., 52 N.Y., 73.) That was an action for assault and battery and plaintiff recovered a judgment, which he assigned to his attorney to secure his costs, and notice of the assignment was given to defendant. Defendant appealed, and the judgment was reversed. The action was then noticed for trial, but before the Circuit the parties settled, and plaintiff executed to defendant a release. Notwithstanding this, plaintiff's attorney moved the trial of the action when it was reached upon the calendar. Defendant's counsel produced the release, but that was disregarded by the court as in fraud of the attorney's rights, and the action was tried, and a report made for plaintiff by default for fifty dollars and costs. This report upon motion on behalf of defendant was set aside the court holding that plaintiff's attorney as against the defendant had no lien, either legal or equitable, which could affect the settlement. This court held that the cause of action was not assignable, and that after the reversal of the judgment the assignment thereof became inoperative, so far as the defendant's rights were concerned; and that, as to him, the cause of action belonged to the plaintiff, which he could not transfer, and which remained subject to his control until merged in a judgment, or at least in a verdict. It was properly said in that case, that the assignment of a judgment would also *Page 452 
include the cause of action upon which it was rendered, in case of a subsequent reversal if the latter was assignable, and the case was treated as if the attorney had had a formal assignment of the cause of action. Judge GROVER said: "It may be said that although the plaintiff was the owner of the cause of action, and as such had a right to control and settle the suit, yet the defendant, knowing that the attorney relied upon the fruits of the action as security for the services, ought to have paid the money to him, nstead of the plaintiff, upon the settlement. The answer to this is, that the attorney, having no legal or equitable lien upon the cause of action, the defendant had the right to pay the money to the plaintiff, to whom it belonged, and was not bound to take care of the interests of the attorney."
It cannot be claimed that plaintiff's attorneys here were in any better condition with the agreement which they took from plaintiff than they would have been if they had had a formal assignment of the whole cause of action to secure them for their services, and yet, as is seen by the case cited, such an assignment would have given them no right to defeat the settlement which these parties made.
But there is another ground upon which the decision of the referee can be upheld. The provision of the Code (§ 303), above cited, has not abrogated sections 71, 72, 2 Revised Statutes, 288, the first of which prohibits attorneys from buying claims for prosecution, and the latter of which is as follows: "No attorney, * * * either before or after suit brought, shall lend or advance, or agree to lend or advance, or procure to be lent or advanced, any money or any bond, bill of exchange, draft or other thing in action, to any person as an inducement to the placing, or in consideration of having placed, in the hands of such attorney, counselor or solicitor, or in the hands of any other person, any debt, demand, or thing in action for collection." And section 73 makes the violation of either of the two preceding sections a misdemeanor. These sections of the Revised Statutes and *Page 453 
the Code are in perfect harmony. An attorney may stipulate with his client for any compensation they may agree upon, and such compensation may be absolute or contingent; but he may not purchase a claim for prosecution, and he may not advance, or agree to advance, any money for the purpose of inducing a party to place a claim in his hands for collection. Now what was done here? One of the attorneys went to the plaintiff, and, for the purpose of inducing him to place the claim in his hands for prosecution, agreed not only to render the services, but also to advance all the money needed to carry on his suit. This, within the meaning of the statute, was an agreement to advance money to the plaintiff. The agreement was a plain violation of the statute, and if such agreements are allowed, the purpose of the statute will be in great degree defeated.
Upon both grounds, therefore, the order of the General Term must be reversed, and the judgment on the report of the referee affirmed, with costs.
RAPALLO and ANDREWS, JJ., concur; FOLGER, J., concurs on first ground; CHURCH, Ch. J., concurs in result; ALLEN, J., did not sit; MILLER, J., not voting.
Order reversed and judgment affirmed.