Per Curiam.*
The examination of this case leads to the conclusion that the learned justice in the court below properly disposed of the motion heard by him. The evidence warrants the conclusion that the defendant’s attorneys had sufficient notice of the interest in, or lien of, the plaintiff’s attorney upon the claim herein, and were therefore under the obligation to notify the latter of the intended settlement, or in the absence of either of them to protect their rights or take the consequences of a settlement without their knowledge or concurrence.
. The order appealed from should therefore be affirmed, with $10 costs and disbursements of the appeal.
The trial of the action was thereafter proceeded with before the referee.
The facts shown and the questions arising upon the trial sufficiently appear from the referee’s opinion.
George Ticknor Curtis, Referee.
This is a very peculiar case, and I have given to it the most careful consideration. The main facts are not in dispute, and the case will be found to turn chiefly upon questions of law. The action was brought, August 27, 1877, to recover the plaintiff’s distributive share of the proceeds of an insurance policy on the life of her mother, which the defendant collected but had not paid over to her. The defense set forth in the answer is, that the defendant collected this money as guardian for the children of Mary F. Schuster (the person whose life was insured), and for their benefit, and that he has paid and applied the whole of it for their benefit in their sup *379 port, maintenance and education. The answer contains no averment as to what part of the money the defendant has applied to the support, maintenance or education of the plaintiff as distinguished from the other children of Mary F. Schuster. The pleading sets up no defense excepting that above stated. But at a subsequent stage of the case, the defendant was required to furnish a bill of particulars of the payments which he claims to have made for the benefit of the plaintiff, and by an order of the court he was restricted to the proof of certain items set forth in that order. The trial before me proceeded upon the issue as to the defendant’s right in this action to set off against her claim on him for her distributive share of the insurance, the alleged payments embraced in the bill of particulars covered by the order of the court. On this issue, of course, the burden of proof is on the defendant to show that the plaintiff was indebted to him for those payments at the time when the present action was brought.
The facts appearing on the evidence, and about which there is little or no controversy, are these:
The defendant married -the plaintiff’s mother, a widow of the name of Bosch, in 1864. At the time of this marriage Mrs. Schuster had three daughters, by her former husband, the plaintiff, Julia Bosch, being the eldest, and at that time about eight years old. The family continued to reside in a house and lot belonging to Mrs. Schuster in her own right, until her death, which took place on or about May 26, 1866. Prior to her death, the defendant supported her children as if they had been his own. After her death, her daughters became the owners of the house and lot above mentioned, and they were also entitled, in equal shares, to the proceeds of a policy of insurance on her life, issued by the Knickerbocker Life Insurance Company, and payable to her children on her decease. The *380 defendant collected this insurance money, but it does not appear that the plaintiff knew, at the time he received it, that he had done so, or knew until long afterwards that the claim on the insurance company existed. Defendant receipted for the money to the company as guardian of the children of Mary F. Schuster. lío legal guardianship is proved. From the time of Mrs. Schuster’s death, until May, 1876, the defendant continued to live in the house belonging to her children, and the plaintiff continued to live with him for a part of that time, and a part of the time lived elsewhere. During these ten years the defendant considered himself as bound to pay and as paying rent for the part of the house occupied by him, and he collected rent from a tenant who occupied another part of it. He also, as executor of his wife, collected some small sums which were part of her personal property.
The present action was commenced by the plaintiff through her attorneys, in August, 1877, she being at that time of full age and a married woman. Before, the action was commenced, the plaintiff was indebted to her attorneys for previous professional services and-moneys advanced, and in consideration thereof and of their undertaking to prosecute her action to recover this insurance money from the defendant, the plaintiff agreed that they should have one-half of the claim and of the amount recovered, and the taxable costs, as their compensation. This agreement was verbal, but a written power of attorney was executed by the plaintiff, appointing them her attorneys. She verified the complaint by her own oath, and appears at that time to have fully intended to prosecute the action and to recover all that was due to her., On or about August 13, 1877, one of her attorneys exhibited to the defendant, at his place of business, her power of attorney, and made some inquiry of him about the life insurance. The defendant denied that Mrs. Schuster’s *381 life had been insured in the Knickerbocker Company, and said that the company had refused to take her.
On February 14, 1879, the plaintiff met the defendant at the office of his then attorneys, S. F. and F. H. Cowdrey, without the knowledge of her- own attorneys, and remained there for some time. It appears that before they met at that office, the defendant and the plaintiff had agreed that he was to pay her $1,000, in settlement of all her claims upon him! The purpose of the meeting at the attorneys’ office appears to have been to talk over her claims, and to consummate a settlement. The result of the interview was that, in settlement of all her claims upon him, growing out of his receipt of rents and other sums belonging to her mother’s estate, and out of her insurance money, the plaintiff agreed to receive, and the defendant paid to her, $1,000. But it does not appear how much of this alleged balance resulted from an accounting in respect of the moneys due from the defendant to his wife’s estate, or how much of it resulted from an accounting in respect to the insurance money. A release was drawn up by the attorneys of the defendant, and executed by the plaintiff, but this paper is not in evidence.
On October 12, 1880, while the trial before me was going on, the plaintiff wrote a letter to the present attorneys of the defendant, Messrs. Coudert Brothers, of which the following is a copy :
[The letter states that plaintiff was cared for and educated by the defendant, since her mother’s death, has received all the articles specified in defendant’s account, and has directed her attorneys to abandon the action.]
On October 7,1880, O. F. Adams, one of the attorneys of the defendant, accompanied by the defendant, called upon the plaintiff at her residence, and obtained from her her signature to a paper. When some part of the contents of this paper was offered in evidence, *382 by the defendant’s counsel, I excluded it, for the reason that it was a stipulation in this action, which the plaintiff had signed without the knowledge of her attorneys of record. There was some conversation, in the course of which the plaintiff looked over the defendant’s bill of particulars, and admitted that the defendant had made the payments therein charged, for her benefit.
I am of opinion that, notwithstanding the suspicious circumstances which point to a special purpose in obtaining these admissions from the plaintiff (a purpose, that is to say, to affect the right of her attorneys to continue the prosecution of this action, or to cut off all recovery in it), those admissions do satisfactorily prove that the items charged in the defendant’s bill of particulars were paid by him for her benefit, during her minority ; and that if the plaintiff alone now had the beneficial interest in the insurance money which the defendant collected, it would be my duty to find that the defendant has a right to off-set those payments against the insurance money due from him to her, provided he had not previously paid himself from another source. But the admissions of the plaintiff, whether made at the office of Messrs. Cowdrey, or in her letter to Messrs. Coudert, or in her interview with Mr. Adams, and the settlement which she made with the defendant, do not, in my judgment, have the slightest tendency to establish the fact that when she commenced this action she was indebted to the defendant for those payments. In other words; none of her admissions or declarations negative the contention of the counsel now representing” her, that the defendant had repaid himself for his advances to the plaintiff out of the moneys belonging to the estate of his wife which came to his hands (during a period of ten years. This is a question of fact which it becomes necessary to settle, because the counsel now representing her has *383 offered evidence having a tendency to show that when this action was commenced the plaintiff owed nothing to the defendant.
It is very clearly proved by the admissions made by the defendant on the trial, that during the ten years from June, 1866, he received in rents and from other items of his deceased wife’s estate, the sum of $8,215. Although he claims to have paid for repairs, insurance and other charges on the house, he did not prove at the trial any one of such payments. In an accounting at the surrogate’s office, or in any court of law, he would have been required to produce vouchers, or to make other proof of such payments, and in default of such proof he would be charged with the whole sum of $8,215. I see no reason why the same rule should not be applied here ; and therefore, in determining the question whether the plaintiff owed him anything at the time this action was brought, I am first to see whether the sum of $8,215, with which he appears to be chargeable, can be treated in this case as subject to any, and what, deduction on account of payments which he claims to have made for the benefit of the real estate which belonged to the children of his wife. I am constrained to hold that the defendant has made no satisfactory proof or explanation of the deductions which he claims from the amounts with which he is chargeable. It is impossible to extract from his testimony any reliable evidence which would authorize me to hold that this sum of $8,215 was absorbed by payments which were a legitimate charge upon his wife’s estate. The book on which he relied to refresh his memory is proved by uncontradicted testimony not to have been purchased by him until some time in the year 1874 ; and from that and other facts I cannot treat it as a book of original entries, and I am strongly, inclined to believe that its pages were filled up at one time. In addition to this, there is not a single voucher *384 produced. I am under the necessity, therefore, of holding that he is chargeable with the whole sum of $8,215, received from his wife’s estate during the. period covered by the bill of particulars in the present action. One-third of the sum of $8,215 is $2,738.50. His expenditures for the plaintiff during the ten years amount to $1,296.75. Instead, therefore, of her being indebted to him at the time when this action was brought, there was a balance of $1,441.75 apparently due from him to her, and which he can account for as not due, only by satisfactory and legal proof that no balance existed. The only conclusion that I can draw from the evidence, therefore, on the issue I am now considering, is, that the defendant, during the whole period when he was supporting the plaintiff, had ample means in his hands from his wife’s estate to reimburse himself for what he paid out for her; that he did so. reimburse-himself as he went along; and that his subsequent effort to charge his bill of particulars upon the life insurance money is an effort to be paid a second time for what he had already been paid. If in point of fact it is .otherwise, I can only say and regret that there is an entire defect of the proof necessary to show that the sum of $8,215 was justly subject to such deductions ; that nothing remained out of it which he could apply to the reimbursement of himself for what he paid for the children of his deceased wife. ' The defendant must have had it in his power to show, at least to some extent, what deductions the entire sum of $8,215 was justly liable to. As he has not shown this to any extent, by evidence by which-1 can treat as reliable, I am constrained to hold that, at the time the plaintiff commenced this action, she was not indebted to him one dollar. Her settlement with him at Mr. Cowdrey’s office, and her receipt of $1,000 as a balance of all her claims, has no tendency to show the true state of the account between them in respect to *385 the moneys which he received from his wife’s estate, for it does not appear that she was then informed what moneys he had received from that source, or that she had any means of knowing what charges he could lawfully make against those moneys; nor does it appear that the claims which he made against her were confined to the items which the court has allowed him to prove in this action, or what was in truth the sum which he ought to have paid her from the insurance money. The settlement was a compromise, arrived at— we cannot tell how—but tested by the evidence on this trial, the sum of $1,000 was by no means what was justly due to her. A settlement made under such circumstances ought to have very little weight in negativing the issue whether the plaintiff owed the defendant anything at the time of bringing this action, when that issue is in reality between the defendant and the plaintiff’s assignee.
There is one circumstance which has a strong tendency to convince me, that at the time this action was commenced, the defendant did not consider that the plaintiff was indebted to him, and that up to that time he was well aware that all his payments for her had been made from moneys which he received from the rents, &c., of the mother’s estate. This is the fact, that he did not at any time make known to her, or to the other children, that their mother’s life had been insured. I think this is a fair inference from his denial that her life had been insured, made to Mr. Hendrickson ; and it justifies the conclusion that he intended to keep that insurance money a secret. After the action was brought, the setting up of his bill of particulars appears to me to have been an afterthought. If in this I have done him an injustice, it will be corrected by the court. But I am unable rationally to" account for his denial that there had been an insurance, except *386 ing by the supposition that he never intended to account for that money.
But if- I have erred in reaching the foregoing conclusions, there remains a question which is partly one of fact, but chiefly a question of law, on which it is my duty to pass. I have already said that,"in my opinion, the admissions of the plaintiff in pais sufficiently prove that he did make the payments for her benefit which the court has allowed him to prove in his bill of particulars. But I have also held that those admissions have no tendency to show that at the time she brought the present action she was still indebted to him for those payments. But inasmuch as before the action was brought, she had assigned one-half of her interest in this chose in action, to her attorneys for a good consideration, the question arises whether her subsequent admissions, either upon the question whether the bill of particulars was correct, or upon the question whether she was indebted for those payments when the action was brought, can affect the real par- , ties in interest. This depends upon the fact of whether she had any remaining interest in the claim when she made those admissions ; for I hold the law to be that an assignor who has no remaining interest in a chose in action cannot by his admissions affect a party who has an interest, and has a right to prosecute the actio'n in the name of the assignor, but for his own benefit. And in this respect it makes no difference, in my opinion, whether the debtor who seeks to avail himself of the admissions against the assignee, knew or did not know of the interest of the assignee. If he knew of that interest, and obtained admissions from another party, he obtained the admissions for a purpose which the law will treat as fraudulent. If he did not, when they were used against a party having an interest, know of the interest of the assignee, it is still the right of the assignee to say that the party who made the *387 admissions had divested himself of all interest in the claim. Was this the situation of the plaintiff %
Before the settlement between the plaintiff and the defendant at Mr. Cowdrey’s office, the plaintiff had parted with one-half of the claim to her attorneys. The assignment was not in writing, but it is proved by uncontradicted testimony, and it entitled the attorneys to prosecute the action to the extent of one-half of the claim. As to that half the plaintiff would remain nominal plaintiff, and her attorneys would be the parties holding the beneficial interest. If the plaintiff had continued to hold the other moiety of the claim, or any part of it, it may be that her admissions would have affected her attorneys. But by the settlement at Mr. Cowdrey’s office, and by receiving $1,000 in full satisfaction of all the claims she could assert, the plaintiff divested herself of all remaining interest in this cause of action. Thereafter, she was not, in my opinion, in a situation to make admissions that would affect her attorneys. She probably did not know this, and therefore she wrote to Messrs. Coudert as she did, unconsciously intimating, that in continuing to prosecute the action, her attorneys were acting unfairly or improperly.
It has been very ingeniously and acutely argued by the counsel for the defendant, that the plaintiff made admissions at Mr. Cowdrey’s office, before the consummation of her settlement with the defendant could have deprived her of her remaining interest; and it has been very properly suggested that the referee cannot look into the release which she gave, as it is not in evidence. I do not understand that the paroi evidence, which proves that settlement, shows in point of fact what admissions the plaintiff made prior to the consummation of the settlement. To undertake to fix thQpunctum temporis at which she made admissions, and to fix it before the money was paid to her, from the very imperfect account we have of the transaction, *388 is quite impossible. The whole interview was one transaction, resulting in a settlement, and the witness who was present testifies to no particular admissions of the plaintiff, prior to the final consummation. In fact, he testifies that she came there prepared to accept $1,000 and discharge her claim. But of what took place by way of making admissions, before she entered that office, we have no account. In regard to her release, I have not looked at it at all, as it is not in evidence. I have considered only the paroi evidence, which shows that there was a settlement, and by that settlement I hold that she put an end to all the interest she could affect by her acts, when she received $1,000 in full satisfaction of all her claims of every kind upon the defendant. As to the interest theretofore vested in her attorneys, she could do nothing to discharge it, without their consent; and consequently her settlement with the defendant could not, as the learned counsel seems to assume, discharge the whole cause of action.
It remains to be considered what judgment should be entered. I have held that the plaintiff was not indebted to the defendant for the sums charged in his bill of particulars at the time the action was brought. If therefore, the plaintiff now stood the sole nominal and beneficial owner of the claim, the proper judgment would be for the entire amount of her distributive share of the life insurance money, with interest from the time when the defendant collected it. But there has come into the case uncontradicted evidence that, the plaintiff’s attorneys are the beneficial owners of one-half of the claim. That evidence comes in as follows : The defendant, admitting in his answer that he had collected the insurance money, undertook to prove at the trial that he had expended the plaintiff’s share of it in her support, education, &c., and exhibited a bill of particulars of his expenditures in her behalf. *389 He did not prove Ms bill of particulars by any evidence excepting the plaintiff’s admissions and declarations that he had made those expenditures, and made them for her benefit. To meet the defendant’s claim to have his bill of particulars treated as in the nature of an off-set against her claim for the life insurance money, the plaintiff’s counsel introduced evidence tending to show that the defendant had been paid his expenditures from another source, before this action was brought; and for the parpóse of showing that the admissions or declarations of the plaintiff could not affect her attorneys, the plaintiff’s counsel proved an oral assignment of one-half of the claim to them; and I have held, that irrespective of the fact that she did not owe the defendant for his expenditures when she brought this action, her declarations or admissions that the defendant had made those expenditures for her, could not affect the beneficial owners of one-half of the claim, on that issue, because when she made those declarations or admissions she had no remaining interest in the cause of action other than that of nominal plaintiff on the record.
By a provision of the Code, when there is an answer the judgment may be for any relief consistent with the case made by the complaint and within the issue. What then was the issue in this case-?
It ivas, under the pleadings, whether the defendant, at the time of the commencement of the action, had expended this life insurance money for the benefit of the plaintiff. In consequence of the mode in which the defendant’s counsel undertook to prove the defendant’s bill of particulars, namely, by the declarations or admissions of the plaintiff, an issue comes into the case, which presents the plaintiff as nominal plaintiff for one-half of the claim, the beneficial owner of that half being the plaintiff’s attorneys. The issue still remains, as made by the pleadings, whether the de *390 fendant expended this life insurance money for the benefit of the plaintiff, as he undertakes to show that he did by his bill of particulars. As to this issue, in respect to one-half of the claim, the declarations or admissions of the plaintiff have no force, because that half did not belong to her excepting as nominal plaintiff, and because, when she made those declarations or admissions she had no interest of her own. Will a judgment then, for one-half of the claim, be consis ten t-with the case made by the complaint and with the issue ?
I conceive it to have been the purpose of the Code to relieve a plaintiff from any technical objection that he has not prayed for the precise relief to which, on the trial, it may seem he is entitled,—but the relief to be granted must still be consistent with the case made by the complaint (Bradley v. Aldrich, 40 N. Y. 504). I do not suppose that consistency with the case made by the complaint, requires the court to shut its eyes to the fact, which may have appeared on the trial, that the plaintiff, as to the ownership of the cause of action, is merely a nominal plaintiff; nor do I suppose that where a plaintiff brings his action by a complaint which alleges that the defendant is indebted to 7iim, there would be .any inconsistency in rendering a judgment for a part of the claim, nominally in favor of the plaintiff on the record, but beneficially for another party whose interest appears on the trial. It is still the claim of the party on the record, but when the judgment comes to be rendered, the nominal character of the plaintiff appears, and still it is entirely consistent with the case made by the complaint and with the issue.
It is no answer to this to say that the pleadings did not make an issue, whether some one else than the plaintiff was beneficially interested. That interest, in the present case, comes to be an issue at the trial, *391 because the proof of the fact of that interest, is in part a legitimate answer to the defendant’s contention that the plaintiff has admitted the whole basis of the defence, namely, that the defendant did make the expenditures for her which he claims to have made; and when this is coupled with the fact that the plaintiff, when she made the admissions, had no interest of her own, the decision, if I am right in 'my view of such admissions, must be, that as to one-half of the claim the defendant never did make the expenditures which he sets up in his answer, because there is no evidence that he made them excepting the declarations and admissions of a party who had no interest in the cause of action. I am of opinion, therefore, that the report should be, that in respect to one-half of the claim there ought to be a judgment in the name' of the plaintiff.
I have taken some pains to express, as clearly as I can, the reasons for this conclnsion, because the case is very peculiarly situated, and I am not aware of any decision which exactly covers it. But if it shall prove that my views are incorrect, I Will take occasion to say that I decide, first, as to the whole claim for the insurance money, that the defendant did not expend any part of it for the benefit of the plaintiff, according to the evidence at the trial, because he made those expenditures from other moneys for which he was accountable to the plaintiff.
Note on Enforcing Attorney’s Lien.
The right ot the attorney, notwithstanding his client’s settlement, to continue litigation in order to enforce his lien for the payment of costs and disbursements, is of such general and increasing importance that the following cases, although in themselves of minor importance, are here presented because they are well considered and state and illustrate the practice now in force.
A brief statement of the previous rule and the change introduced by the act of 1879, amending section 66 of the Code of Civil Procedure, will probably assist the reader. Under the Code as it stood just be^ *392 fore that amendment it was well settled that without agreement between client and attorney, the attorney, on recovering judgment, had a lien thereon for his services in the action, the value of which was presumptively the taxable costs ; and that by express agreement between attorney and client, that the attorney should have a share of the recovery as his compensation, or that his compensation, even though larger than taxable costs, should be had out of his recovery, the client might further give the attorney an equitable lien, even prior to judgment, in the nature of an assignment of so much money as should equal the sum earned by him. Brown v. Mayor, &c. N. Y., 11 Hun, 21, and cases cited. But the sanction thus given to contracts for prospective services was not applicable to contracts based upon a past consideration. Whitehead v. Kennedy, 69 N. Y. 462; reversing 7 Hun, 230. Nor did it sanction an agreement on the part of the attorney to advance the moneys necessary for the expenses of prosecution (Coughlin v. N. Y. Central, &c. R. R. Co., 71 N. Y. 443); and the court would not allow the attorney to prosecute an action on a cause of action not assignable, to enable the attorney, after the client had settled, to collect his fees. Id. Hence the plaintiff in an action for a cause which was not assignable, might discharge the cause of action without regard to bis attorney’s claim for costs, unless there was an existing judgment (Pulver v. Harris, 52 N. Y. 73; affirming 62 Barb. 500; Wright v. Wright, 70 N. Y. 96; affirming 41 Super. Ct. [J. & S.] 432; Roediger v. Simmons, 2 Abb. N. C. 279; Christie v. Perkins, 6 Daly, 237; Walsh v. Flatbush, &c. R. R. Co., 11 Hun, 190); and it was only in case of a collusive settlement after the party relying on it had himself received notice of the attorney’s claim, that the court would protect the latter.
In 1879, and after these decisions and others of similar effect, the following provision was added to section 66 of the Code of Civil Procedure: “Prom the commencement of an action, or the service of an answer containing a counter-claim, the attorney who appears for a party has a lien upon his client’s cause of action or counter-claim, which attaches to a verdict, report, decision or judgment in his client’s favor, and the proceeds thereof, in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.” L. 1879, c. 542.
There has been some difference of opinion as to whether, under this provision, notice from the attorney to the party is necessary, in order to protect the attorney’s claim, it being held in the city court of Brooklyn that it is not. The supreme court have held, in several cases, that the same rule as to notice is applicable under this new provision as was under the section as it formerly.stood, viz., that to *393 secure the lien therefor before judgment there must be either notice or a fraudulent or collusive settlement.
The attorney, in proceeding for his own account to litigate the action after his client has settled it, is himself the actor, and although there is no' substitution of himself on the record as plaintiff, his motion for leave to proceed, where that is necessary,, or to vacate a discontinuance or a satisfaction entered, if any such has been entered of record, must be a motion in his own behalf rather than on behalf of the client. Murray v. Jibson, 22 Hun, 386. If there has been no obstacle to the continuance of the action put upon the record, but only an agreemeut of compromise or release between the parties, a motion to vacate their settlement is not necessary. And an order setting aside a settlement does not authorize the attorney to enter judgment for his costs without bringing the cause to trial. Picard v. Yencer, 34 Hun, 103.
The following cases indicate the practice.
Kehoe v. Miller (N. Y. Marine Court, Special Term, December, 1881, Shea, Ch. J.).
Defendant answered, setting up among other things a release executed by plaintiff subsequent to the commencement of the action. Plaintiff’s attorney moved for an order striking this out, on the ground that it was in derogation of his lien.
Charles S. Spencer, for the motion.
Israel F. Fisher, opposed.
Shea, Ch. J.
The practice in such cases as this is not by motion to strike out the release. That release affects the plaintiff’s individual rights simply; and the attorney’s lien on the subject-matter of the action remains and will continue intact. The attorney can, therefore, prosecute the action, notwithstanding the release given since its commencement, and if he succeeds in recovering a verdict on the original cause, he enforces the judgment so far as his costs are connected with it, notwithstanding the release; and an order can be entered to this effect. 24 Hun, 182. This motion is not necessary. McCabe v. Fogz, 50 How. Pr. 488; Wilber v. Baker, 24 Hun, 24; and Goddard v. Trenbath, Id. 183.
Motion denied. No costs.
Deutsche v. Webb (N. Y. Marine Ct., Trial Term, February, 1882, McAdam, J.).
When this cause was called for trial, defendant’s attorney objected to going on upon the ground that the parties had settled the cause of action. Plaintiff’s attorney claimed that he had the right to proceed for the purpose of enforcing his costs.
*394 McAdam, J.
The attorney has a lien upon the cause of action by force of section GG of the Code, which he has a right to enforce, and which the client cannot discharge oxee [it by payment (see 2 Month. Law Bul. 71; 22 Hun, 386, 600). The attorney may therefore proceed with the trial of the action for the purpose of enforcing his lieu. Bat if unsuccessful in proving the cause of action, he will be personally answerable to the defendant for the trial fee and the disbursements of the trial.
Quinnan v. Clapp (N. Y. Common Pleas, Trial Term, June, 1881, Van Hoesen, J.).
This was an action for an assault and battery, and before trial the parties settled their differences, the, plaintiff giving a release under seal to the defendant. When the cause was reached in its order on the calendar the counsel for the defendant said that the suit ought to be marked “ settled.” The attorney for the plaintiff objected on the ground that he had not been paid the taxable costs in the action.
Edward H. Hawlce, for defendant.
J. C. Macomone, opposed.
Van Hoesen, J.
[After stating the above facts.]—Before section. 66 of the Code of Civil Procedure, as amended in 1879, came into operation, there would have been no force in the plaintiff’s attorney’s objection. Coughlin v. N. Y. C. R. R., 71 N. Y. 443; McBratney v. Rome R. R. Co., 17 Hun, 385; Pulver v. Harris, 52 N. Y. 73; Wade v. Orton, 12 Abb. Pr. N. S. 444. The question here is, Has section 66, which was intended to change the former law in certain cases, any application to a ease in which the plaintiff sues as a poor person ?
Section 460 provides that the attorney for the poor person must act without compensation. He has no right, therefore, to expect anything beyond the provision for his payment which is made by section 467; which declares that “when costs are awarded in favor,of a poor person, they must be paid over to bis attorney, when collected from the adverse party, and distributed among the attorney and counsel of the poor person, as the court directs.”
It will be seen that the attorney for the poor person has no right whatever to compensation till costs are awarded. In other words, his right does not attach till the court has given its fiat that the poor person shall receive costs; and then he is entitled to no more than the court chooses to allow him as his share. Where the suit is settled by the parties before judgment, no costs are awarded to the poor person, and therefore there is nothing to be given to the attorney. The attorney for the poor person never has a lien upon his client’s cause of action or counter-claim, nor can a valid agreement be made between *395 the poor person and his attorney for compensation to be paid to the latter for bis services (§ 460). Section 66 was intended solely to give the attorney a lien upon his client’s counter-claim or cause of action for the sum which his client agreed, either expressly or by implication, to pay him. It has no reference to a case in which there neither is nor can be any agreement for compensation; and the right to costs which the court may, under section 467, bestow upon the attorney is not, therefore, within the protection of section 66.
There is no suggestion that the settlement between the parties was collusive, or made" with intent to defraud the attorney. Indeed, it is difficult to see how, in a case of this nature, such a suggestion could be made.
An action for assault and battery in forma pauperis ought not to go on after the plaintiff is satisfied, for the mere purpose of enabling an attorney to collect a bill of costs. The practice of suing in forma pauperis is becoming common—far too common. I have in my mind one attorney whose clients almost invariably appear as poor persons, in speculative actions for personal injuries. These observations do not apply to the attorney for the plaintiff in this case. ,
The motion to mark this case settled is granted.
Russell v. Somerville (N. Y. Supreme Court, First Department; Chambers, February, 1881; again, November, 1881, Barrett, J.).
This was a motion to vacate an order in supplementary proceedings. Defendant moved on an affidavit which set up an assignment by plaintiff of his judgment, and notice thereof; that no part thereof had been paid; and alleged want of authority from the assignee to institute supplementary proceedings. The affidavit of the assignee was also produced.
Cushman & Van Pelt, for the motion.
B. 0. Thayer, opposed.
Barrett, J.
After careful consideration I think this order should be discharged. The attorney undoubtedly possesses a lien; and if it become necessary he may properly enforce it. But the owner of the judgment does not desire these proceeding to be continued, and did not desire that they should be instituted. The attorney has no general right to proceed to the collection of the judgment against the owner’s will. He certainly can collect no more than his costs and fees. Now here he has proceeded not to enforce his lien but to collect the judgment generally. Eor aught that appears his client would have paid him, or will pay him his fees and costs upon demand. These claims should at all events be liquidated, and the necessity for the enforcement of the lien shown as a foundation for the proceedings. *396 Upon the case, as it now stands, I think the motion should be granted and tlie order vacated, but without costs and without prejudice.
Order accordingly.
The attorney then moved for a rehearing.
Barrett, J.
The attorney, upon these papers undoubtedly has a lien for $338.13, the.taxable costs and interest thereon. It is quite clear, too, that ho may enforce the judgment for that amount, and to that end may resort to supplementary proceedings. But the present application was entirely unnecessary, for the reason that the original proceedings were dismissed without prejudice to fresh supplementary proceedings to enforce any lien established by the affidavit upon which they (such fresh proceedings, meaning) were based. Such was the effect of the clause in the order of February 5, 1881, “without prejudice to any lion which the attorney of record in said judgment may have, or any further application or proceeding which he may be advised to make or institute.” So far as this is an application for a revival of the proceedings which were dismissed on February 5, 1881, it should be denied, and with costs. For in that aspect it is an attempt under the guiso of a rehearing to restore injunctions which have been out of existence for move than eight months, and to compel the defendant and the third person, under penalty of contempt, to apply whatever money or property was then under the restraint of such injunctions. And for the additional reason that the original proceedings were dismissed, not because of any question respecting the lien, but because the affidavit upon which the proceedings were instituted was general, and did not proceed upon a statement of the attorney’s status. A rehearing would, therefore, do no good, for the proceedings would again have to be dismissed, because the lien and the right to proceed thereon, &c., do not appear in the original affidavit. This application must be denied, with $10 costs, to be deducted from the $338.12 costs, and again without prejudice to supplementary proceedings properly instituted to enforce the lien. • -*

Present, Davis, P. J., Brady and Barrett, JJ.