In the Matter of NELSON H. TUNNICLIFF, an Attorney, Respondent.

First Department, July 14, 1922.

**Attorney and client — disciplinary proceedings — attorney censured for agreeing with client to advance expenses of litigation — such agreement champertous and in violation of Penal Law, § 274.**

An agreement between an attorney at law and his client for the recovery of the client's interest in an estate, which contains the clause that said " first party [the attorney] agrees to advance for the benefit of the party of the second part all necessary costs and expenses looking to the recovery of said estate and property," violates section 274 of the Penal Law and is champertous.

An attorney at law making such an agreement is guilty of misconduct, but where it appears that there are no charges of fraud or misrepresentation and there is considerable evidence as to his good character and as to his valuable services and straightforward conduct for many years in a work of peculiar character, condemnation of the character of such agreement and a censure of the attorney satisfy the ends of justice.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

*Scott, Gerard & Bowers* [*Francis M. Scott* of counsel], for the respondent.

CLARKE, P. J.:

The respondent was admitted to practice by the Appellate Division, First Department, in December, 1906. The petition alleges:

(a) In March, 1916, respondent entered into illegal and champertous agreements with Thomas A. Campbell and Peter F. Campbell whereby he agreed to defray the costs and expenses of the prosecution of their claim against the estate of John William Campbell, deceased, in consideration of the execution and delivery to respondent by the said Campbells of assignments of fifty per cent of their interests in said estate. In an action brought by the

Campbells against the respondent to set aside the agreements the court held that the same were champertous and void and this finding was affirmed upon appeal to the Court of Appeals.

(b) The respondent has for several years been engaged in the business of selling information regarding claims which the purchasers may have in estates of unidentified deceased relatives and obtaining assignments from the purchasers of large parts of their interests in said estates in consideration for disclosing to them information regarding such interests.

The answer denies that the respondent has been guilty of misconduct and that he has ever been or is now engaged in business of selling information, etc. He alleges that prior to his admission in this State he practiced for one year in Illinois and fifteen in Nebraska; that for many years and especially since his admission in this State he has devoted himself to the particular business of discovering and locating heirs or claimants of estates. He has been principally employed in such matters by savings banks, looking up dormant accounts considered undesirable; they constantly employ respondent. For his compensation the respondent is obliged to look to the claimants because the banks consider that they cannot use their general funds to pay for such work. Respondent has prepared forms of agreement and powers of attorney securing to him as his compensation a percentage of the amount which each claimant shall recover; that this respondent has never engaged in the business of selling information respecting claims which persons may have in the estates of unidentified deceased relatives unless the respondent's method of doing business as above detailed is to be so described. As to the Campbells respondent denies that his act was either illegal or champertous. He says that in the spring of 1916 respondent received from James H. Bacon of San Francisco a letter inclosing a clipping from a San Francisco newspaper stating that one John William Campbell, an aged carpenter, had died in a relief home leaving nearly $30,000 in cash in bank; that he left a will leaving his estate to his two brothers Thomas and Edward who were living somewhere in New York State or Maine at the time the will was made; that if the brothers were dead and no heirs survived them the money should go to the Archbishop of San Francisco; that respondent at once inserted in New York city papers an advertisement asking for information for heirs of Thomas Campbell formerly residing in Eleventh street. Thomas A. Campbell, who proved to be one of the heirs and next of kin of Thomas Campbell, called on respondent who told him all he knew about the claim. Thomas and Peter Campbell signed the agreement for a contingent fee of fifty per cent of the amount recovered.

Respondent immediately proceeded to take the necessary steps to establish their claim. Subsequently and on or about July 31, 1916, they undertook to cancel the powers of attorney and to abrogate the agreements for compensation. Thereafter on July 12, 1917, they began two actions in equity in the Supreme Court asking that the aforesaid powers of attorney be vacated, annulled and declared void upon the alleged ground that the respondent had obtained the execution thereof by fraud. These actions were defended and came on for trial before the Special Term. No attempt was made to prove any fraud, plaintiffs relying wholly upon their attempted revocation. Judgment was rendered for plaintiffs, *first*, that plaintiffs had a right to revoke and had effectually revoked their retainer and their agreements as to respondent's compensation; *second*, that the agreements were champertous and, therefore, illegal and void. No claim of champerty had been made in either of the complaints and no issue thereon had been framed nor had that question been raised upon the trial, at least so far as appears from the record. Respondent moved at Special Term to amend the decision and record by striking out all of the findings of fact and conclusions of law relating to the alleged champerty as well as the recitals thereof in the judgment. This motion was denied and respondent appealed to the Appellate Division from said judgment and also from the order denying the motions to amend. This court affirmed the judgment but reversed the order declining to amend the decision and judgment and granted the motion. (*Campbell* v. *Tunnicliff*, 185 App. Div. 506.)

Both parties appealed to the Court of Appeals. That court, two judges dissenting, affirmed the judgment without opinion and reversed the order which this court had made, reversing the order of the Special Term denying the motion to amend the findings and conclusions of law in the decision. (229 N. Y. 568.) Subsequently the respondent received $800 in full satisfaction of his claim for services rendered. The answer further says as to the clause of the retainer:

" 4. Said first party agrees to advance for the benefit of the party of the second part all necessary costs and expenses looking to the recovery of said estate and property."

That in nearly every case it is found that the parties interested are wholly unable to pay the necessary expenses of perfecting their claims, which expenses frequently run into large figures. The meaning of the clause in the mind of the respondent and his practice has been to advance what expenses were necessary and then recoup himself out of the moneys recovered before taking his percentage therefrom.

Briefs have been presented by both sides and it is suggested that this court decide this proceeding upon the papers without sending it to an official referee. The respondent has submitted a large number of letters from many savings banks and members of Congress, Senators and others vouching for his character, honesty and ability and setting forth his repeated employments, his energy and honesty, perseverance and experience in the discovery of claimants to dormant accounts and also certifying to the effect that the banks did not feel that they could take the moneys of other depositors to pay for services so rendered although they are all anxious to get rid of such dormant accounts.

In the suits which the Campbells brought the complaints alleged false and fraudulent representations, but no evidence of any such fraud was adduced upon the trials and no findings of fraud were made by the court in these actions. Hearings were had before the grievance committee, at which both of the Campbells and the respondent were present and examined at length. In the charges here presented there is no imputation of fraud or false representation. It is the claim of the respondent in his brief that the sole foundation of the charge that the agreements were champertous is to be found in the 4th clause of the agreement reading as follows: " 4. That said first party [the respondent] agrees to advance for the benefit of the party of the second part all necessary costs and expenses looking to the recovery of said estate and property." The one word in the clause which he says is significant and important is the word " advance " and he urges that the law in this State defining the offense of champerty is that contained in the 2d subdivision of section 274 of the Penal Law forbidding an attorney: " 2. By himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy for the recovery thereof." And he points out that this section differs from the definition of the offense formerly contained in the Revised Statutes (2 R. S. 288, § 72) which forbade an attorney to " lend or advance, or agree to lend or advance, or procure to be lent or advanced, any money, or any bond, bill of exchange, draft or other thing in action, to any person, as an inducement to the placing, or in consideration of having placed, in the hands of such attorney, * * * or in the hands of any other person, any debt, demand or thing in action, for collection," and states that the difference in the two statutes is

not without significance, for clearly there is a wide difference between "giving," and merely "lending and advancing;" that apparently merely lending or advancing the expenses of a litigation no longer constitutes champerty in this State.

In considering the claim thus advanced force must be given, we think, to what occurred in the case alluded to between the Campbells and the respondent. The court at Special Term had found as a finding of fact:

"IX. Defendant agreed to prosecute as attorney the claim of the plaintiff in consideration of a fifty per cent contingent interest in the outcome and defendant to defray the costs and expenses of said prosecution and agreed if he was not successful he would bear the loss of the costs and expenses and advances" and, as conclusions of law:

"1. The agreement of March 25, 1916, was not only to advance money but to carry on the suit or action at the expense of the defendant himself and under the agreement that defendant should receive a certain compensation if successful and thus he was promoting the suit and defraying for plaintiff the expense thereof and hence the agreement was and is champertous, illegal and void *ab initio*.

"2. Defendant agreed to prosecute, as attorney, the claim of the plaintiff, in consideration of a fifty per cent contingent interest in the outcome, and defendant to defray the costs and expenses of such prosecution, and agreed that if he was not successful, he would bear the loss of the costs, expenses and disbursements and advances.

"3. That the contract of an attorney to conduct proceedings for half the recovery, at his own expense, is champertous, illegal and void *ab initio*.

"4. That the defendant contracted, as an attorney to conduct proceedings for one-half the recovery, at his own expense, and that the said contract was void *ab initio* and champertous and illegal.

"5. That defendant agreed not only to render the services, but also to advance the money to carry on the plaintiff's suit, and this, within the meaning of Section 274 of the Penal Law, is an agreement to advance money to the plaintiff, and a violation of the Statute.

"6. Section 274 of the Penal Law prohibits an attorney from promising or giving any valuable consideration to any person as an inducement to place, or in consideration of having placed in his hands a demand for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy

for the recovery thereof, and the understanding with the defendant by which he was to collect the claim of the plaintiff from the estate of John William Campbell, deceased, and if the claim was not collected that defendant was to pay the costs of the attempted collection, and that the plaintiff was not to be liable to pay the defendant any consideration whatsoever in such an event, is within the prohibition of the statute." And

" 21. The power of attorney given by the plaintiff to the defendant and dated March 25, 1916, was and is void *ab initio.*"

It was these provisions of the decision and of the judgment which this court upon the appeal ordered stricken out. The Court of Appeals, however, reversed our order striking out said provisions. We cannot ignore that significant act of the court of last resort. It seems to us that it is a decision adverse to the claim made by the respondent, namely, that the change in phraseology of the statute, strenuously argued by him, has eliminated from the condemnation thereof an agreement by an attorney to pay all the costs, expenses and disbursements of litigation if unsuccessful. In this we are supported by the authorities.

In *Coughlin* v. *N. Y. C. & H. R. R. R. Co.* (71 N. Y. 443) Judge EARL said: " An attorney may stipulate with his client for any compensation they may agree upon, and such compensation may be absolute or contingent; but he may not purchase a claim for prosecution, and he may not advance, or agree to advance, any money for the purpose of inducing a party to place a claim in his hands for collection. Now what was done here? One of the attorneys went to the plaintiff and, for the purpose of inducing him to place the claim in his hands for prosecution, agreed not only to render the services, but also to advance all the money needed to carry on his suit. This, within the meaning of the statute, was an agreement to advance money to the plaintiff. The agreement was a plain violation of the statute and if such agreements are allowed, the purpose of the statute will be in great degree defeated."

In *Matter of Clark* (184 N. Y. 222) the court, after quoting the above extract from *Coughlin* v. *N. Y. C. & H. R. R. R. Co. (supra),* said: " In 1876 the Legislature transferred into the Code of Civil Procedure the substance of sections 72 and 73 of 2 Rev. Stat. 288, now to be found embodied in that Code as follows: ' § 74. An attorney or counsellor shall not, by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or the hands of another person, a demand

of any kind, for the purpose of bringing an action thereon.' \* \* \*
For nearly a century the law has prohibited them [attorneys]
from obtaining retainers by offering or giving any valuable induce-
ment whatever to the desired clients themselves, for the plain
reason that such conduct tends to stir up litigation which might
not otherwise arise and because needless litigation has always been
deemed a public evil."

In *Matter of Speranza* (186 N. Y. 280) Judge WERNER, speaking
for a unanimous court, said: " But if it is true that there is a written
proposition signed by the attorney, by which he agrees to ' pay all
court fees, fees of witnesses and necessary disbursements to judg-
ment,' if the appellant would agree to the scale of compensation set
forth in the other writing, it is too clear for discussion that the
arrangement would constitute no less a palpable violation of the
provisions of section 74 of the Code of Civil Procedure,\* than that
which was so recently condemned in *Matter of Clark* (184 N. Y.
222.) "

In *Matter of Newell* (174 App. Div. 94), decided by the Appellate
Division of the Fourth Department in 1916, an attorney was
disbarred. The court, quoting from the report of the referee, said:
" The retainer provides that the attorneys are to charge the client
nothing unless successful in collecting damages. It provides that in
consideration thereof the client agrees to pay the attorneys a certain
per cent of damages received in addition to their costs as compensa-
tion for their services and disbursements. The word ' disbursements '
I think means expenses and not taxable disbursements which are
included in the word ' costs,' and this construction is made necessary
I think because the retainer provides that in case of a settlement
where there would be no costs or taxable disbursements the same
percentage should be paid as compensation for the attorneys' services
and ' disbursements.' \* \* \* It has been held that an agree-
ment by an attorney to render services and also to advance money
needed to carry on the suit was an agreement to advance money to
the plaintiff and violated the statute. " (Citing *Coughlin* v. *N. Y.
C. & H. R. R. R. Co.*, *supra*, and *Matter of Speranza, supra.*)

I am unable to avoid the conclusion that the provision of the
retainer now under consideration violates the provisions of the
statute as it now exists, and that in presenting such retainer to
his prospective clients and obtaining their signature thereto, the
respondent was guilty of misconduct as an attorney at law. In
view, however, of the fact that no charges of fraud or misrepresen-
tation are made and of the very considerable testimony as to the

---

\* Now Penal Law, § 274.— [REP.

good character, the valuable services and straightforward conduct, extending over many years in the peculiar character of the work conducted by the respondent, we are of the opinion that a condemnation of the character of the retainer obtained by him and a censure of the respondent for the misconduct found will satisfy the ends of justice.

Laughlin, Dowling, Merrell and Greenbaum, JJ., concur.

Respondent censured. Settle order on notice.